**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:19-CR-00121 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY MORALES | ) | |
| | ) | |
| | ) | May 1, 2020 |

**MEMORANDUM OF DECISION RE: DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE (ECF NO. 58)**

Kari A. Dooley, United States District Judge

Defendant Anthony Morales ("Morales") moves the Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (or "the First Step Act") to reduce his sentence to time served effective as soon as a bed opens up at an appropriate halfway house facility, designation to the halfway house for 120 days, to be followed by supervised release, the conditions of which may be further considered by the Court with input from the US Probation Office and the Government. The defendant has a history of asthma, which he asserts renders him at a higher risk for death or serious injury should he contract COVID-19, and which therefore provides an extraordinary and compelling reason to reduce his sentence. The Government opposes the motion on the ground that the defendant is dangerous and poses a substantial risk to the public. The Court held oral argument on the motion on April 30, 2020. For the reasons that follow, the motion is DENIED.

**Background**

On March 12, 2020, this Court sentenced the defendant to a 48-month term of imprisonment to be followed by three years of supervised release following his guilty plea to unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In imposing sentence, the Court varied from the guideline range and imposed a sentence

below the advisory guideline range due to the childhood trauma, abuse and neglect the defendant had suffered as well as his efforts at self-rehabilitation undertaken prior to sentencing. The Court also noted that weighing against leniency was the extremely serious nature of the conduct underlying the offense of conviction and the defendant's significant criminal history, Category VI under the Guidelines, which included both violent felonies and narcotics offenses. Morales has served approximately twelve months of his 48-month sentence. He is presently incarcerated at the Wyatt Detention Facility awaiting designation and transfer to a Bureau of Prisons (BOP) facility.

On April 27, 2020, the defendant filed the instant motion for reduction in sentence pursuant to the First Step Act seeking compassionate release on the basis that his asthma diagnosis presents an "extraordinary and compelling reason[] warrant[ing]" release in light of the COVID-19 pandemic.

**Discussion**

18 U.S.C. § 3582(c)(1) provides in relevant part:

The court may not modify a term of imprisonment once it has been imposed except that

. . .

the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)    extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).[1] "[I]n order to be entitled to relief under the statute, [the defendant] must . . . demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence." *United States v. Smith*, No. 3:16-CR-48 (MPS), 2020 WL 1903160, at *2 (D. Conn. Apr. 17, 2020) (quoting *United States v. McCarthy*, No. 3:17-CR-230 (JCH), 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020)). Importantly, "[t]he defendant bears the burden of showing that [he] is entitled to a sentence reduction." *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020). And even where the defendant demonstrates that "extraordinary and compelling reasons warrant such a reduction," the reduction "must be consistent with applicable policy statements issued by the U.S. Sentencing Commission." *Gagne*, 2020 WL 1640152, at *2 (D. Conn. Apr. 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). Finally, "before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant." *Id*.

The applicable Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. However, the Commission has not amended the 2016 policy statement since Congress passed the First Step Act in 2018, so it does not speak to motions filed by defendants, rather than the BOP.[2] Accordingly, district courts generally consider the policy statement "not binding but . . . rather, helpful guidance." *United States v. Smith*, No. 3:16-CR-48 (MPS), 2020 WL 1903160, at *2 n.3

---

[1] Before seeking release from this Court, Morales, through counsel, sought release from the warden at Wyatt Detention Facility, where Morales is currently housed, and the BOP's regional counsel. However, Morales' efforts were denied on the basis that a sentenced inmate in a non-BOP facility is not yet under the BOP's jurisdiction for purposes of the First Step Act's exhaustion requirement. And the warden at Wyatt has no authority under the Act to seek compassionate release. Under these circumstances, it appears that the defendant is without any administrative remedy to exhaust. *See United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020); *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones.").

[2] "Previously it was only the BOP that could file a motion for sentence reduction, but Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), in order to afford a defendant as well as the BOP the right to file a motion for sentence reduction." *United States v. Vence-Small*, No. 3:18-CR-00031 (JAM), 2020 WL 1921590, at *3 (D. Conn. Apr. 20, 2020).

(D. Conn. Apr. 17, 2020) (internal quotation marks omitted); *see also United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *2 (D. Conn. Apr. 20, 2020) (noting that courts may make a determination as to what qualifies as an "extraordinary and compelling reason" independently). Following the policy statement's guidance, the Court may reduce a term of imprisonment if, "after considering the factors set forth in 18 U.S.C. § 3553(a) . . . the court determines that" (1) "[e]xtraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The Application Notes in the Commentary to the policy statement enumerate a number of specific circumstances which would constitute extraordinary and compelling reasons for purposes of the statute. Relevant to this Court's determination is that the Commission clearly contemplated that a variety of circumstances, other than those specifically articulated, might also warrant a sentence reduction. Application Note 1(D) to Section 1B1.13 contains a catch-all residual clause allowing for relief for "other" extraordinary and compelling reasons.

Asthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19. *People with Moderate to Severe Asthma*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (noting "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."); *Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19)*, WORLD HEALTH ORGANIZATION (Feb. 28, 2020), https://www.who.int/publications-detail/report-of-the-who-china-joint-mission-on-coronavirus-disease-2019-(covid-19), at 12 (finding mortality rate of those with COVID-19 and chronic respiratory disease to be 8.0%). In recognition of this recent revelation, a number of courts have

held that, in light of the COVID-19 pandemic, an inmate with asthma has demonstrated an "extraordinary and compelling" reason for sentence reduction. *See Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *3 (finding "extraordinary and compelling reasons" where defendant suffered "from chronic asthma and other respiratory issues that put him at increased risk should he contract COVID-19."); *United States v. Norris*, No. 3:18-CR-243 (SRU) (D. Conn. Apr. 16, 2020) (finding extraordinary and compelling reasons to reduce defendant's sentence where defendant suffered from asthma acknowledging that "individuals with chronic respiratory disease are deemed at greater risk of COVID-19."); *McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *5 (finding that the defendant's age and medical condition, including "COPD, asthma, and other lung-related ailments," "taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [defendant's] sentence."). This Court agrees with these conclusions.

The Court must therefore take up the question of whether the defendant poses a danger to the community and must consider the sentencing factors contained within 18 U.S.C. § 3553. *See* U.S.S.G. § 1B1.13. This is an individualized assessment that must be conducted on a case-by-case basis. *See, e.g., McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *5 (releasing defendant sentenced to a 38-month term of imprisonment in January 2019 for armed bank robbery, finding that he did not pose a danger to the community because he previously "excelled" at a halfway house as he was "compliant with all program rules and regulations.") (internal quotation marks omitted); *Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *5 (finding that defendant convicted of wire fraud and tax evasion with about eight months left on his term of incarceration did not pose a danger to the community because he "will be on supervised release at home during the time he would have been incarcerated, and there is nothing in [the] record

suggesting that he would be a danger to any other person or the community."); *United States v. Gamble*, No. 3:18-CR-0022-4(VLB), 2020 WL 1955338, at *1, *5–6 (D. Conn. Apr. 23, 2020) (denying sentence modification and finding the defendant a danger to the community—defendant had served only 26 months of a 92-month sentence, had a significant criminal history (Category VI), and had a cavalier attitude about his criminal possession of firearms).

This Court imposed a 48-month sentence on March 12, 2020, in part, to protect the community. The underlying offense conduct involved an armed assault of the mother of the defendant's children at which children were present. The defendant essentially held the victim and her children hostage for several hours before abandoning the situation. It was a dangerous and volatile situation that could have ended horribly. The defendant, 30 years old, has an extensive criminal history that dates to when he was 19 years old. He has faced incrementally greater periods of incarceration over the years with little or no deterrent effect. His prior convictions include a violent robbery, felony assault, and narcotics offenses. He has no legitimate work history since the time that he worked as a dishwasher for approximately one year when he was 18 years old. He has a significant history of substance abuse. At the sentencing, these factors weighed in favor of a lengthy sentence at or near the top of the applicable guideline range of 51–63 months. But there were also significant mitigating factors which counseled a below guidelines sentence. And it was, and remains, the Court's fervent hope that the defendant will continue on the path he started before sentencing so that with the passage of time and the benefit of BOP programming, his transition back into the community will pose a significantly reduced risk to that community. But only 7 weeks have passed since sentencing and the defendant remains at Wyatt awaiting designation and transfer to a suitable and appropriate BOP facility. He has had neither the benefit of the passage of

time nor any BOP programming. The Court concludes that the defendant continues to pose a real danger to the community and release is not appropriate.

The defendant's proposal, release to a halfway house for 120 days, to be followed by supervised release terms that the Court, the Probation Office and the Government could participate in crafting, and which could include significant restrictions on his liberties, does not adequately ameliorate the danger posed by the defendant at this time. Nor does the sentence of "time served" achieve the goals of sentencing or otherwise find the proper balance of the Section 3553 sentencing factors.

The Court recognizes that while the BOP addresses the challenges posed by the COVID-19 pandemic, access to programming and mental health treatment will be temporarily limited, perhaps significantly so. And this may frustrate at least part of what the Court was hoping to accomplish when it fashioned the defendant's sentence. But the other significant goal of the Court's sentence—protecting the community—remains a poignant concern.

Accordingly, the Emergency Motion for Sentence Reduction is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of May 2020.

  */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE